IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| TIMOTHY BOOTH, | : | |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | CIVIL ACTION |
| | : | |
| CAPTAIN SCOTT DRISSEL, et al., | : | NO. 20-01751 |
| | : | |
| Defendants. | : | |
| | : | |
| | : | |

**MEMORANDUM**

J. Younge                                                                                                     November 1, 2023

I.      **INTRODUCTION**

Currently before this Court are Defendant Lieutenant Tamika Allen's Motion for Summary Judgment (ECF No. 75) and Defendants City of Philadelphia (hereinafter "City"), Captain Scott Drissel, and Sergeant Brian McMenamin's Motion for Summary Judgment (ECF No. 77). The Court finds these motions appropriate for resolution without oral argument. Fed. R. Civ. P. 78; L.R. 7.1(f). For the reasons set forth in this Memorandum, Defendants' Motions will be Granted in Part as to Counts One through Seven of Plaintiff's Second Amended Complaint (ECF No. 37). Counts Eight through Eleven of Plaintiff's Second Amended Complaint will be Dismissed without Prejudice for refiling, if at all, in state court.

II.     **FACTUAL BACKGROUND**

Plaintiff Timothy Booth has been employed as a custodian with the Philadelphia Police Department since September 2012. (Second Amended Complaint (hereinafter "Am. Compl.") ¶ 9, ECF No. 37.) Plaintiff is a Black, Muslim man. (Am. Compl. ¶ 6.) At all relevant times, Defendants Captain Scott Drissel, Lieutenant Tamika Allen, and Sergeant Brian McMenamin

were police officers with the Philadelphia Police Department.  (Am. Compl. ¶ 7.)  Cpt. Drissel was appointed the Commanding Officer for Plaintiff's workplace at the Police Department's 12th District building in January 2019.  (Am. Compl. ¶¶ 24-25.)

Plaintiff has alleged that there were six separate verbal altercations between him and either Lt. Allen or Sgt. McMenamin, occurring between April 2018 and July 2019, that form the basis for this action.  Two verbal altercations occurred on April 10, 2018, between Plaintiff and Lt. Allen, allegedly prompted by Plaintiff complaining about Lt. Allen to her subordinates and by Plaintiff then 'snitching' on Lt. Allen to their supervisor regarding the first exchange.  (Am. Compl. ¶¶ 16-22.)  Lt. Allen was immediately reprimanded for the first incident.  (Am. Compl. ¶ 21.)  The third incident occurred on March 12, 2019, when Lt. Allen allegedly threatened Plaintiff and warned him to keep the female locker room door closed after he uses it.  (Am. Compl. ¶ 27.)  The fourth incident occurred on March 19, 2019, when Lt. Allen accused Plaintiff of not keeping the female locker room door closed.  (Am. Compl. ¶¶ 32-33.)  Following this, the fifth incident occurred when Plaintiff asked Lt. Allen why she put a padlock on the female locker room door, requiring him to get a key to open it, and Lt. Allen allegedly answered that it was to teach Plaintiff a lesson.  (Am. Compl. ¶ 38.)

After being accused of insubordination towards Lt. Allen by Cpt. Drissel, Plaintiff told Police Commissioner Richard Ross about the alleged unfair treatment.  (Defendant Allen's Exhibit D, pp. 2-4, ECF No. 75-4.)  Shortly after, Plaintiff was told that he would need to move from the break room, which Plaintiff had used to pray daily, to make room for evidence storage, and some of his personal items, including his prayer rug, were moved to the garage, which Plaintiff now alleges was an act of religious discrimination.  (Am. Compl. ¶¶ 50-56, ECF No. 37; Defendant Allen's Exhibit F, pp. 13-14, ECF No. 75-4.)  In the garage, Plaintiff also observed

empty beer cans and liquor bottles which had allegedly been drunk by officers after being confiscated from arrestees. (Am. Compl. ¶¶ 56-57, ECF No. 37.) On March 20, 2019, Plaintiff emailed Commissioner Ross, detailing what he believes was retaliatory harassment instigated by Lt. Allen and noting that the officers drink confiscated liquor while on duty. (Defendant Allen's Exhibit E, pp. 6-8, ECF No. 75-4.) On May 16, 2019, Plaintiff made a statement to Sergeant Brent Conway of the Internal Affairs Division, detailing his exchanges with Lt. Allen and explaining what had happened with the break room and that his belongings, including his prayer rug, had been moved. (Defendant Allen's Exhibit F, pp. 10-16, ECF No. 75-4.) This statement made no mention of any alleged racial discrimination and specifically denied religious discrimination. (Defendant Allen's Exhibit F, p. 15, ECF No. 75-4.)

The sixth and final incident occurred after the May 16, 2019 complaint, on July 17, 2019, when Sgt. McMenamin allegedly verbally abused and assaulted Plaintiff for improperly accepting a ride from an on-duty police officer to get coffee. (Am. Compl. ¶¶ 65-69, ECF No. 37.) Plaintiff alleges that Sgt. McMenamin was yelling in Plaintiff's face with balled fists. (Am. Compl. ¶ 68.) After filing a complaint against Sgt. McMenamin, Plaintiff contends that Cpt. Drissel questioned him about the complaint in an intimidating manner and, on October 2, 2019, served him with retaliatory disciplinary charges for being the one to approach Sgt. McMenamin in a threatening manner during their exchange. (Am. Compl. ¶¶ 83-87, 108-09; Request for Disciplinary Action, ECF No. 77-4.) Plaintiff then contends that he suffered a mental breakdown due to these disciplinary charges and has consequently been out of work since October 3, 2019. (Am. Compl. ¶ 110, ECF No. 37)

Plaintiff has alleged violations of 42 U.S.C. § 1981, 42 U.S.C. § 1983, Title VII of the Civil Rights Act of 1964 (hereinafter "Title VII"), the Pennsylvania Human Relations Act

(hereinafter "PHRA"), the violation of the Pennsylvania Whistleblower Law (hereinafter "PWL"), assault, invasion of privacy, and the intentional infliction of emotional distress. *See* Am. Compl., ECF No. 37. Plaintiff had previously filed a complaint with the Equal Employment Opportunity Commission, which dismissed his charge on February 20, 2020. (ECF No. 37-1, p. 1.) Plaintiff then filed his Complaint with this Court on March 31, 2020. (ECF No. 2.) His First Amended Complaint was filed on June 20, 2021. (ECF No. 34.) His Second Amended Complaint was filed on July 12, 2021. (ECF No. 37.) Defendants filed their Motions for Summary Judgment, now considered by this Court, on August 14, 2023. (ECF No. 75 & 77.)

### III.   LEGAL STANDARD

Summary judgment is appropriate if the movant shows "that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). *Liberty Mut. Ins. Co. v. Sweeney*, 689 F.3d 288, 292 (3d Cir. 2012). To defeat a motion for summary judgment, there must be a factual dispute that is both material and genuine. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 24-49 (1986); *Dee v. Borough of Dunmore*, 549 F.3d 225, 229 (3d Cir. 2008). A material fact is one that "might affect the outcome of the suit under the governing law[.]" *Anderson*, 477 U.S. at 248. A dispute over a material fact is "genuine" if, based on the evidence, "a reasonable jury could return a verdict for the nonmoving party." *Id*.

The movant bears the initial burden of demonstrating the absence of a genuine dispute of a material fact. *Goldenstein v. Repossessors Inc.*, 815 F.3d 142, 146 (3d Cir. 2016). When the movant is the defendant, they have the burden of demonstrating that the plaintiff "has failed to establish one or more essential elements of her case." *Burton v. Teleflex Inc.,* 707 F.3d 417, 425 (3d Cir. 2013). If the movant sustains their initial burden, "the burden shifts to the nonmoving party to go beyond the pleadings and come forward with specific facts showing that there is a

genuine issue for trial." *Santini v. Fuentes*, 795 F.3d 410, 416 (3d Cir. 2015) (internal quotations omitted) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)).

At the summary judgment stage, the court's role is not to weigh the evidence and determine the truth of the matter, but rather to determine whether there is a genuine issue for trial. *See Anderson*, 477 U.S. at 249; *Jiminez v. All Am. Rathskeller, Inc.*, 503 F.3d 247, 253 (3d Cir. 2007). In doing so, the court must construe the facts and inferences in the light most favorable to the non-moving party. *See Horsehead Indus., Inc. v. Paramount Commc'ns, Inc.*, 258 F.3d 132, 140 (3d Cir. 2001). Nonetheless, the court must be mindful that "[t]he mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Anderson*, 477 U.S. at 252.

## IV. DISCUSSION

### A. Plaintiff Has Failed to Establish a Cause of Action for Racial and Religious Discrimination in Violation of Section 1983, Section 1981,[1] or the PHRA.

#### 1. *Plaintiff Has No Cause of Action Against the City Under Section 1983.*

A cause of action under Section 1983 can only be asserted against a local government where the plaintiff has alleged facts supporting that the local entity has taken constitutionally violative actions pursuant to its official policies and customs. *Monell v. New York Dept. of Social Servs.*, 436 U.S. 658, 694 (1978); *McGovern*, 554 F.3d at 121. Absent an official policy or custom, the local governmental entity cannot be held liable for the violative actions of its employees. *See e.g.*, *Monell*, 436 U.S. 658 (1978). To demonstrate the existence of such a

---

[1] Section 1981 does not provide a private or implied cause of action against a local government. *Jett v. Dallas Indep. Sch. Dist.*, 491 U.S. 701, 735-36 (1989); *McGovern v. City of Phila.*, 554 F.3d 114, 118-19 (3d Cir. 2009). The exclusive federal damages remedy for the violation of Section 1981 is provided through Section 1983. *Jett*, 491 U.S. at 735-36.

policy or custom, the plaintiff must show either that a decisionmaker had established and promulgated an official policy or that there was a governmental custom that existed despite not being granted formal approval. *Berg v. Cnty. of Allegheny*, 219 F.3d 261, 275 (3d Cir. 2000); *McGovern*, 554 F.3d at 121. This policy or custom must have caused the alleged injury. *Berg*, 219 F.3d at 276. Here, Plaintiff has not presented any evidence supporting a finding that the City had any official policy or custom that contributed to the injury he alleges. As such, Plaintiff has failed to establish a cause of action against the City under Section 1983.

       2. *Plaintiff Has Failed to Establish a Prima Facie Case for Intentional Racial and Religious Discrimination in Violation of Section 1983, Section 1981, or the PHRA.*

Claims for race and religious discrimination brought pursuant to Section 1983 and the PHRA are analyzed using the burden-shifting framework articulated in *McDonnell Douglas Corporation v. Green*, 411 U.S. 792 (1973), in relation to alleged violations of Title VII of the Civil Rights of 1964. *Jones v. Sch. Dist. of Phila.*, 198 F.3d 403 (3d Cir. 1999); *Oakley v. Orthopedic Assoc. of Allentown, Ltd.*, 742 F. Supp. 2d 601, 608 (E.D. Pa. 2010). The plaintiff must first establish a *prima facie* case of discrimination, after which the burden shifts to the defendant "to articulate some legitimate, nondiscriminatory reason for the [adverse employment action]." *Jones*, 198 F.3d at 410. Plaintiff would then have the burden of proving that the proffered legitimate, nondiscriminatory reason was pretextual. *Id.* A *prima facie* case for Title VII discrimination requires the plaintiff to demonstrate that (1) he is a member of a protected class; (2) he was qualified for the position he sought to retain; (3) he suffered an adverse employment action; and (4) the adverse employment action occurred under circumstances that could give rise to an inference of intentional discrimination. *Sarullo v. U.S. Postal Serv.*, 352 F.3d 789, 797 (3d Cir. 2003). The parties agree that Plaintiff is a member of a protected class,

being both Black and Muslim, and that Plaintiff is qualified for the position he has been employed in at all relevant times.

### a. There Has Been No Discernible Adverse Employment Action.

An adverse employment action is one that is "serious and tangible enough to alter an employee's compensation, terms, conditions, or privileges of employment." *Storey v. Burns Int'l Sec. Servs.*, 390 F.3d 760, 764 (3d Cir. 2004).  This can be shown by evidencing a materially adverse change to the terms or conditions of employment.  *Glanzman v. Metro. Mgmt. Corp.*, 290 F. Supp. 2d 571, 582 (E.D. Pa. 2003) (citing *Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742, 761 (1998)).  "Mere inconvenience" does not satisfy this requirement.  *Id.*  This adverse employment action must usually inflict economic harm and be taken by a supervisor with the ability to make decisions inflicting such economic harm.  *Id.*

Plaintiff has not asserted a discernible adverse employment action.  He has alleged, among other things, that the previous location where he had prayed pursuant to his religion was no longer available to him (Am. Compl. ¶¶ 50-55, ECF No. 37), that the door to the female locker room was padlocked such that he had to first retrieve a key to perform his job duties (Am. Compl. ¶¶ 37-38), that he was badmouthed by a fellow employee (Am. Compl. ¶ 22), that he had been verbally abused in six separate workplace arguments (Am. Compl. ¶¶ 16, 22, 27, 32-33, 38, 66-69), and that he had been subjected to an allegedly retaliatory disciplinary charge, prompting him to be permanently out sick with mental health issues the next day (Am. Compl. ¶¶ 110).

Even assuming that Plaintiff's assertions are true, the actual terms and conditions of Plaintiff's employment were unchanged beyond what amounts to a minor inconvenience to his ability to efficiently perform his work, and Plaintiff suffered no economic harm because of any of the aforementioned actions.  Furthermore, the mere presentation of a potential disciplinary

charge, which Plaintiff had the opportunity to defend against at a hearing, does not alter the terms and conditions of employment in of itself.  *See* ECF No. 79-12, pp. 14-15; *Lanza v. Postmaster Gen. of U.S.*, 570 F. App'x 236, 239-40 (3d Cir. 2014) (finding that a preliminary warning of potential discipline, which included a recommendation for suspension, is insufficient to constitute an adverse employment action).

The creation of a hostile work environment can also constitute an adverse employment action.  *Heredia-Caines v. Lehigh Valley Hosp., Inc.*, 580 F. Supp. 3d 114, 130 (E.D. Pa. 2022).  Such an environment is created when "(1) [plaintiff] suffered intentional discrimination; (2) the discrimination was severe or pervasive; (3) the discrimination detrimentally affected [plaintiff]; (4) the discrimination would have affected a reasonable person in the same position; and (5) there is a basis for employer liability." *Jajua v. Diakon Lutheran Social Ministries*, 299 F. Supp. 3d 645, 657 (E.D. Pa. 2018).  Factors that may make the alleged conduct severe or pervasive include "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Dykes v. Marco Grp., Inc.*, 222 F. Supp. 3d 418, 430 (E.D. Pa. 2016).  Isolated incidents, unless extremely serious, do not create an actionable hostile work environment claim.  *Faragher v. City of Boca Raton*, 524 U.S. 775, 788 (1998).  While the Plaintiff undoubtedly found his treatment upsetting, nothing that he alleges rises to the level of being severe or pervasive enough to constitute a hostile work environment, even if the Court chose to accept that it was motivated by discriminatory animus.

The timeline as laid out by Plaintiff includes two verbal exchanges with Lt. Allen in April 2018, followed by eleven months without incident, and then a series of exchanges with the same individual in the Spring of 2019 about the locking and unlocking of personnel rooms.  *See* Am.

Compl., ECF No. 37.  After this, Plaintiff has alleged that there was a verbally abusive exchange with a separate individual, Sgt. McMenamin, in July 2019.  (Am. Compl. ¶¶ 65-69, ECF No. 37.) While the alleged verbal exchanges were certainly inappropriate, including curse words and derogatory language, the Court does not believe three clusters of incidents in the span of over a year can be considered pervasive.  *See Rosati v. Colello*, 94 F. Supp. 3d 704, 716 (E.D. Pa. 2015) (finding that three isolated incidents over a four-month period is not sufficient to support a hostile work environment claim).  Upsetting as these incidents may have been, they cannot reasonably be said to have altered the terms and conditions of Plaintiff's workplace, particularly because of their sporadic nature.  It is evident that Plaintiff and Lt. Allen did not get along, but it is not the judiciary's place to involve itself in interpersonal workplace conflict nor to resolve disputes as to the fairness of the accusations leveled at each respective employee during the course of these conflicts.  Lacking any discernible adverse employment action, Plaintiff is unable to establish a *prima facie* case of discrimination under Title VII.

      b.   There Has Been No Identified Evidence Raising an Inference of Discriminatory Intent.

Even assuming that an adverse employment action had been taken, Plaintiff has failed to identify any evidence raising an inference of discriminatory intent by any Defendant.  Plaintiff's sole arguments in support of his claim of racial discrimination against him as a Black man is that (1) Lt. Allen, a Black woman, used the phrase "your Black ass" in reference to him during their arguments and (2) he had not witnessed any of the Defendants treating any Caucasians in a similar manner.  (Am. Compl. ¶¶ 17, 39-40, 77-80, ECF No. 37; Plaintiff's Declaration, ¶ 10, ECF No. 78-6.)  Plaintiff has not brought forth evidence that anyone else of any race had been treated similarly.  A claim of discrimination cannot be sustained by simply "asserting an event and then asserting that it was motivated by racial bias," particularly where the incidents

complained of "implicate [Defendants'] personality, temperament, and the other various factors that tend to cause favor or disfavor between co-workers rather than racial issues." *Davis v. City of Newark*, 285 F. App'x 899, 902-03 (3d Cir. 2008). Instead, there must be evidence suggesting that the conduct alleged was motivated by identity-based discrimination. *Clegg v. Falcon Plastics, Inc.*, 174 F. App'x 18, 25 (3d Cir. 2006). There is simply nothing for the Court to point to that suggests discriminatory intent.

Plaintiff also contends that he was subjected to religious discrimination against him as a Muslim because the break room he had previously used to pray was converted to evidence storage. (Defendant Allen's Exhibit F, pp. 13-14, ECF No. 75-4.) As was explained to Plaintiff, this was a temporary conversion because construction had begun on another room, requiring that his break room be vacated. (Plaintiff's Exhibit P-9, ECF No. 78-10, pp. 33-34.) At the time, there were no empty rooms that Plaintiff could use to privately pray as he had been during his prior years of employment. (Plaintiff's Exhibit P-9, ECF No. 78-10, pp. 33-34; Plaintiff's Deposition, 248:14-24; 249:1-6, ECF No. 75-3, p. 65.) While this Court recognizes that this room conversion imposed a burden on Plaintiff's ability to exercise his religion during work hours in the way he previously had, there is nothing to suggest that it was a religiously-motivated decision. Plaintiff himself, in May 2019, did not believe he had been subjected to religious discrimination because of this incident. (Defendant Allen's Exhibit F, p. 15, ECF No. 75-4.) In fact, Plaintiff never raised the possibility of race or religious discrimination in his prior reports against Defendants until October 8, 2019. (Defendant Allen's Exhibit H, pp. 22-23, ECF No. 75-4.) As unfair as Plaintiff may believe his treatment was, there is an insufficient basis from which to infer that it was in any way driven by racial or religious animus.

B. **Plaintiff Has Failed to Establish a Prima Facie Case for Retaliation in Violation of Section 1983, Section 1981, or the PHRA.**

Claims of retaliation brought under Section 1983, Section 1981, and the PHRA are analyzed under the same standard as under Title VII. *Estate of Oliva ex rel. McHugh v. New Jersey*, 604 F.3d 788, 798 n. 14 (citing *Humphries v. CBOCS West, Inc.*, 474 F.3d 387, 403-04 (7th Cir. 2007), *aff'd*, 553 U.S. 442 (2008)). To bring a successful claim for retaliation, a plaintiff must prove that (1) they engaged in protected activity, (2) they suffered an adverse employment action, and (3) there was a causal connection between the protected activity and the adverse employment action. *Estate of Oliva*, 604 F.3d at 798. Protected activity includes opposing an action made unlawful by Title VII or participating in a Title VII proceeding, either by bringing a claim or assisting in another's. *Moyer v. Kaplan Higher Educ. Corp.*, 413 F. Supp. 2d 522, 526 (E.D. Pa. 2006). A complaint "must be specific enough to notify management of the particular type of discrimination at issue." *Kier v. F. Lackland & Sons, LLC*, 72 F. Supp. 3d 597, 616 (E.D. Pa. 2014). General complaints about an employer are not considered protected activity for the purposes of Title VII and do not create a cause of action for retaliation. *Daniels v. School Dist. of Phila.*, 776 F.3d 181, 195 (3d Cir. 2015).

Bringing a claim alleging unlawful employment discrimination may be considered protected activity. *Webb v. Merck & Co., Inc.*, 450 F. Supp. 2d 582, 600 (E.D. Pa. 2006). However, Plaintiff did not make such a claim prior to leaving his position – Plaintiff alleged merely that he had been subjected to repeated unfair treatment and that that unfair treatment had not been properly addressed. Plaintiff did not allege unlawful employment discrimination based on his race and religion until October 8, 2019, which was after mental health issues caused him to leave his position. *See* Defendant Allen's Exhibit H, pp. 22-23, ECF No. 75-4. None of his previous complaints could have put Defendants on notice of discriminatory treatment,

particularly where he specifically denied it.  Furthermore, as has already been established, Plaintiff has not shown that he has been subjected to an adverse employment action based either on his membership in a protected class or his complaints.  *See also Boykins v. SEPTA*, 722 F. App'x 148, 159 (3d Cir. 2018) (finding that isolated acts of criticism, false accusations and verbal reprimands are not retaliatory harassment constituting an adverse employment action).  As such, Plaintiff has failed to establish a *prima facie* case for retaliation in violation of Title VII.

    C.    **Plaintiff's Remaining State Claims Will Be Dismissed Without Prejudice.**

A district court may decline to exercise supplemental jurisdiction over state law claims after dismissal of all federal claims in an action.  *See* 28 U.S.C. § 1367(c)(3) (providing that a district court "may decline to exercise supplemental jurisdiction over a claim . . . if . . . the district court has dismissed all claims over which it has original jurisdiction").  Having failed to establish a federal claim, Plaintiff's remaining state law claims, including claims for violation of the PWL, assault, intentional infliction of emotional distress, and invasion of privacy, will be dismissed without prejudice.

**V.    CONCLUSION**

For the foregoing reasons, Defendants' Motions will be Granted in Part as to Counts One through Seven.  Counts Eight through Eleven are Dismissed without Prejudice for refiling, if at all, in state court.

An appropriate Order follows.

**IT IS SO ORDERED.**

                                          BY THE COURT:

                                          /s/ John Milton Younge
                                          **Judge John Milton Younge**